UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

CIVIL MINUTES - GENERAL

| Case No. | 2:16-cv-05864-CAS(JCx) | Date | January 30, 2016 |
|---|---|---|---|
| Title | DAVINCI AIRCRAFT, INC. v. UNITED STATES OF AMERICA ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER, U.S. DISTRICT JUDGE | |
|---|---|---|
| Connie Lee | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: | |
| David Baum | Justin Okun, AUSA | |
| Abraham Wagner | | |

**Proceedings:** United States' Motion to Dismiss (Dkt. 12, filed November 28, 2016)

## I. INTRODUCTION

On August 5, 2016, DaVinci Aircraft, Inc. ("DaVinci") filed a complaint against the United States of America, as well as Michael Christmas and Rodney Lewis in their official capacities as members of the United States Air Force. Dkt. 1 ("Compl."). The Complaint alleges five claims against all of the defendants, namely, (1) fraud, (2) negligent misrepresentation, (3) conspiracy, (4) implied contract, and (5) conversion. Id. The gravamen of DaVinci's complaint is that agents of the United States Air Force allegedly conspired to fraudulently compel DaVinci to surrender ten "JASSM antennas."[1]

On November 28, 2016, the United States filed a motion to dismiss DaVinci's complaint pursuant to Federal Rules of Procedure 12(b)(1) and 12(b)(6). Dkt. 12 ("MTD"). On January 6, 2017, DaVinci filed an opposition. Dkt. 16 ("Opp'n"). On January 17, 2017, the United States filed a reply. Dkt. 17 ("Reply").

Having carefully considered the parties' arguments, the Court finds and concludes as follows.

---

[1] Neither party offers a definition of the acronym "JASSM," however, the Government has offered evidence that at least part of the JASSM antenna was, at one time, classified at the "SECRET and SECRET//SPECIAL ACCESS REQUIRED level." Dkt. 17-1 ("Hemmingsen Decl."), Ex. A. The Government avers that the antennas in question are "Global Positioning antennas for the AGM-158 Joint Air-to-Surface Standoff Missile." Hemmingsen Decl. ¶ 3.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:16-cv-05864-CAS(JCx) | Date | January 30, 2016 |
|---|---|---|---|
| Title | DAVINCI AIRCRAFT, INC. v. UNITED STATES OF AMERICA ET AL. | | |

## II. BACKGROUND

DaVinci alleges the following facts.

On or about March 2013, DaVinci avers that ten JASSM antennas were originally manufactured by Ball Aerospace and subsequently offered for sale to the public by Lockheed Martin. Compl. ¶ 13. The antennas were allegedly purchased by Avatar Unlimited "as part of a bulk sale of surplus parts," id. ¶ 15, and subsequently sold again to BPB Surplus, id. ¶ 16. DaVinci alleges that, on August 1, 2013, it purchased the ten antennas from BPB Surplus for $3,000. Id. ¶ 17.

Thereafter, DaVinci offered the ten JASSM antennas for sale for an asking price of $125,000 each. Id. ¶ 18. On September 17, 2013, Laura Voyatzis, a special agent with the U.S. Air Force Office of Special Investigations, accompanied by three other agents, Lenora Madison, John Drapalik, and David Givernero, visited DaVinci's office. Id. ¶ 19. Voyatzis allegedly stated that the agents were there to inspect and discuss the JASSM antennas. Id. After inspecting the antennas, Voyatzis allegedly demanded that DaVinci surrender the ten JASSM antennas. Id. ¶ 20. DaVinci refused to surrender the antennas and the agents asked for the price at which DaVinci would sell the equipment. Id. ¶ 22. After learning that the asking price was $125,000 per antenna, the agents left. Id.

On April 21, 2014—in response to a price request from Rodney Lewis, a contracting officer on Eglin Air Force Base—DaVinci offered to sell the antennas for $75,000 each. Id. ¶ 23. Lewis allegedly made a counteroffer to pay $7,359 for all ten antennas, based upon the price that DaVinci originally paid. Id. ¶ 25. DaVinci rejected the offer and insisted upon payment of $750,000. Id. ¶ 26. Lewis allegedly replied, "I encourage you to propose a more reasonable price so we both can benefit." Id.

On June 11, 2014, DaVinci allegedly offered to sell the antennas to Eglin Air Force Base for a total of $600,000. Id. ¶ 29. DaVinci received no response. Id. ¶ 30.

On September 30, 2014, Joel Russell, a special agent with the Air Force Office of Special Investigations, arrived at DaVinci's office with two other Air Force Officers. Id. ¶ 31. The agents insisted that DaVinci surrender the JASSM antennas. Russell stated that the Air Force was authorize to and intended to take possession of the antennas. Id. Russell presented DaVinci with a letter, signed by Michael Christmas, Special Agent in Charge at the Office of Special Investigations, "purportedly authorizing the Air Force to take possession of the JASSM" antennas. Id. ¶ 32. The letter stated:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:16-cv-05864-CAS(JCx) | Date | January 30, 2016 |
|---|---|---|---|
| Title | DAVINCI AIRCRAFT, INC. v. UNITED STATES OF AMERICA ET AL. | | |

> The undersigned, being fully authorized to take possession of the following items being claimed as constituting or consisting of "information relating to the national defense" acknowledges received of ten (10) JASSM antennae – from Leonardo Parra and DaVinci Aircraft. The undersigned further acknowledges that the delivery of the said items by Leonardo Parra and DaVinci Aircraft is made under compulsion of law pursuant to 18 USC 793 (d) and is made without prejudice to any claims by Leonardo Parra and/or DaVinci Aircraft for their fair market value.

Id. ¶ 32; dkt. 1-1 at 13, Ex. F ("Christmas Letter") (incorporated by reference). DaVinci alleges that it surrendered the antennas "pursuant to the demands and threats made by Special Agent Russell to provide the JASSM Antennae under compulsion of law . . . including the threat of criminal prosecution for any failure to comply." Id. ¶ 33.

DaVinci avers that the Air Force lacked authority to take possession of the JASSM antennas and fraudulently represented its authority to induce surrender of the antennas. Id. ¶ 41. DaVinci asserts that defendants knowingly and intentionally made false and fraudulent statements to DaVinci regarding its authority and the risk of criminal prosecution in order to defraud DaVinci. Id. ¶ 47. According to DaVinci, defendants knowingly conspired to make the foregoing misrepresentations to induce surrender of property without due process of law. Id. ¶ 57. Additionally, DaVinci contends that defendants formed an implied contract with DaVinci to pay the full quoted price of $1,250,000 by engaging in conduct on September 30, 2014, which defendants allegedly had reason to know would cause DaVinci to believe the parties had formed an implied contract. Id. ¶ 84.

On March 12, 2015, DaVinci's counsel allegedly sent a letter to the Office of Special Investigations at Eglin Air Force Base, requesting that an attached "Form 95, Administrative Claim for Damages" be filed regarding plaintiff's intended tort claims. Id. ¶ 35. "Ms. Sipp," a litigator in the Claims Division of the Office of the Staff Judge Advocate for the Department of the Army, requested that DaVinci file its request, including the original signed documents, with the Claims Division of the Office of the Staff Judge Advocate "to process the claim." Id. ¶ 36. On August 18, 2015, DaVinci sent the requested documents to the Claims Division as well as the Office of Special Investigations at Eglin Air Force Base. Id. ¶ 37. On August 20, 2015, the Office of the Staff Judge Advocate acknowledged receipt of DaVinci's claim against the United States Government. Id. ¶ 38.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:16-cv-05864-CAS(JCx) | Date | January 30, 2016 |
|---|---|---|---|
| Title | DAVINCI AIRCRAFT, INC. v. UNITED STATES OF AMERICA ET AL. | | |

### III.   LEGAL STANDARDS

####   A.   Rule 12(b)(1)

A motion pursuant to Federal Rule of Civil Procedure Rule 12(b)(1) motion tests whether the court has subject matter jurisdiction to hear the claims alleged in the complaint. Fed. R. Civ. P. 12(b)(1). Such a motion may be "facial" or "factual." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). That is, a party mounting a Rule 12(b)(1) challenge to the court's jurisdiction may do so either on the face of the pleadings or by presenting extrinsic evidence for the court's consideration. See White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000); Thornhill Publishing co. v. General Tel. & Electronics, 594 F.2d 730, 733 (9th Cir. 1979).

Once a Rule 12(b)(1) motion has been raised, the burden is on the party asserting jurisdiction. Sopcak v. N. Mountain Helicopter Serv., 52 F.3d 817, 818 (9th Cir. 1995); Ass'n of Am. Med. Coll. v. United States, 217 F.3d 770, 778–79 (9th Cir. 2000). If jurisdiction is based on a federal question, the pleader must show that he has alleged a claim under federal law and that the claim is not frivolous. See 5B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (3d ed.). If jurisdiction is based on diversity of citizenship, the pleader must show real and complete diversity, and also that his asserted claim exceeds the requisite jurisdictional amount of $75,000. See id. When deciding a Rule 12(b)(1) motion, the court construes all factual disputes in favor of the non-moving party. See Dreier v. United States, 106 F.3d 844, 847 (9th Cir. 1996).

####   B.   Rule 12(b)(6)

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. Under this Rule, a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level." Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:16-cv-05864-CAS(JCx) | Date | January 30, 2016 |
|---|---|---|---|
| Title | DAVINCI AIRCRAFT, INC. v. UNITED STATES OF AMERICA ET AL. | | |

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

Unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials). In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

Federal Rule of Civil Procedure 8(a) provides that a pleading stating a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to meet this standard, a claim for relief must be stated with "brevity, conciseness, and clarity." See Charles A. Wright & Arthur R. Miller, 5 Federal Practice and Procedure § 1215 (3d ed.). "The Plaintiff must allege with at least some degree of particularity overt acts which Defendants engaged in that support the Plaintiff's claim." Jones v. Community Redevelopment Agency, 733 F.2d 646, 649 (9th Cir. 1984). The purpose of Rule 8(a) is to ensure that a complaint "fully sets forth who is being sued, for what relief, and on what theory, with enough detail to guide discovery." McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:16-cv-05864-CAS(JCx) | Date | January 30, 2016 |
|---|---|---|---|
| Title | DAVINCI AIRCRAFT, INC. v. UNITED STATES OF AMERICA ET AL. | | |

As a general rule, leave to amend a complaint that has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986); see Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

### IV.  DISCUSSION

#### A.  DaVinci's Claims for Fraud, Negligent Misrepresentation, and Conspiracy Involving Fraud or Misrepresentation

The Government argues that DaVinci fails to state a claim and/or this Court lacks jurisdiction over DaVinci's claims for fraud, misrepresentation, and conspiracy involving misrepresentation. MTD at 2. The Government contends that it is immune from suit except to the extent it consents to be sued, and the Federal Tort Claims Act ("FTCA") does not affect a waiver of sovereign immunity with respect to these claims. Id. at 2–3.

"It is well settled that the United States is a sovereign, and, as such, is immune from suit unless it has expressly waived such immunity and consented to be sued." Gilbert v. DaGrossa, 756 F.2d 1455, 1458 (9th Cir. 1985). "The doctrine of sovereign immunity applies to federal agencies and to federal employees acting within their official capacities." Hodge v. Dalton, 107 F.3d 705, 707 (9th Cir. 1997). "A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text, and will not be implied." Lane v. Pena, 518 U.S. 187, 192 (1996); see also McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988) ("The question whether the United States has waived its sovereign immunity against suits for damages is, in the first instance, a question of subject matter jurisdiction.").

The FTCA waives the United States' sovereign immunity in claims "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act of omission of any employee of the Government while acting within the scope of his office or employment[.]" 28 U.S.C. § 1346(b)(1). However, the FTCA excepts particular claims from this waiver, including "misrepresentation, deceit, [and] interference with contract rights[.]" 28 U.S.C. § 2680(h). The Ninth Circuit has thus concluded that "claims against the United States for fraud or misrepresentation by a federal officer are absolutely barred by 28 U.S.C. s 2680(h)." Owyhee Grazing Ass'n, Inc. v. Field, 637

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:16-cv-05864-CAS(JCx) | Date | January 30, 2016 |
|---|---|---|---|
| Title | DAVINCI AIRCRAFT, INC. v. UNITED STATES OF AMERICA ET AL. | | |

F.2d 694, 697 (9th Cir. 1981). "[C]ivil conspiracy is not an independent cause of action." Copelan v. Infinity Ins. Co., 192 F. Supp. 3d 1063 (C.D. Cal. 2016). Accordingly, the FTCA equally bars claims for conspiracy to commit fraud and negligent representation against the United States or federal employees acting in their official capacities. See, e.g., Poole v. McHugh, No. 12-cv-8047-PCT-JAT, 2012 WL 3257654, at *1 (D. Ariz. Aug. 8, 2012) (concluding that "Plaintiff's claims for fraud and conspiracy are barred because the United States has not waived its sovereign immunity for these intentional tort claims").

The Court therefore concludes that it may not exercise jurisdiction over DaVinci's claims for fraud, misrepresentation, and conspiracy involving misrepresentation. The Court thus **GRANTS** the Government's motion to dismiss DaVinci's claims for fraud, misrepresentation, and conspiracy involving misrepresentation and **DISMISSES** those claims without prejudice.

      **B.**    **DaVinci's Claim for Conspiracy Related to Abuse of Process**

DaVinci alleges that the Government, Lewis, and Christmas "knowingly conspired to induce Plaintiff to surrender its property without due process[.]" Compl. ¶ 57. As a result, the Government contends that DaVinci may be alleging a claim for abuse of process under the FTCA. MTD at 3. At the outset, the Court notes that DaVinci never expressly articulates a claim for abuse of process in its complaint.

"The two fundamental elements of the tort of abuse of process [are]: first, an ulterior purpose, and second, a willful act in the use of the process not proper in the regular conduct of the proceeding." Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc., 728 P.2d 1202, 1209 (Cal. 1986) (quotation marks omitted). "The tort requires some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process. . . . There is, in other words, a form of extortion, and it is what is done in the course of negotiation, rather than the issuance or any formal use of the process itself, which constitutes the tort." Microsoft Corp. v. A-Tech Corp., 855 F. Supp. 308, 311 (C.D. Cal. 1994) (quotation marks omitted).

The FTCA permits a claim for abuse of process if the acts are committed by an investigative or law enforcement agent. See 28 U.S.C. § 2680(h). However, the Government argues that any abuse of process claim is preempted by 28 U.S.C. § 2680(c), which bars any claim arising from "the detention of any goods, merchandise, or other

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:16-cv-05864-CAS(JCx) | Date | January 30, 2016 |
|---|---|---|---|
| Title | DAVINCI AIRCRAFT, INC. v. UNITED STATES OF AMERICA ET AL. | | |

property by any officer of customs or excise or any other law enforcement officer" unless "the property was seized for the purpose of forfeiture" pursuant to federal law. MTD at 3. DaVinci alleges that the seizure of the antennas was made pursuant to 18 U.S.C. § 793(d) and "without prejudice to any claims by Leonardo Parra and/or DaVinci Aircraft for their fair market value." Compl. ¶ 32. Section 793(d) of the Espionage Act provides:

> Whoever, lawfully having possession of, access to, control over, or being entrusted with any . . . instrument [or] appliance . . . relating to the national defense . . . *willfully retains the same and fails to deliver it on demand to the officer or employee of the United States* entitled to receive it . . . [s]hall be fined not more than $10,000 or imprisoned not more than ten years, or both.

18 U.S.C. § 793(d) (emphasis added). Because the seizure was made pursuant to Section 793(d) the Government argues that the antennas were *not* seized for the purpose of forfeiture and, therefore, DaVinci's abuse of process claim is barred by 28 U.S.C. § 2680(c). MTD at 4.

In its opposition, DaVinci argues that he properly alleges a claim for conspiracy based on abuse of process because "[a]t no point did the Government ever assert" that the antennas were defense equipment or involved national security such that Section 793(d) would apply. Opp'n at 5. DaVinci also contends that prior cases addressing the seizure of property pursuant to Section 793(d) addressed "classified or militarized goods inappropriately sold by the Government to a private buyer" and "strongly suggest" that the law "was only meant to be applied in cases of serious misuse of national security information or defense equipment." Id.; see Dubin v. United States, 289 F.2d 651 (Ct. Cl. 1961) ("Dubin I"); Dubin v. United States, 363 F.2d 938 (Ct. Cl. 1966) ("Dubin II"); Ast/Servo Sys., Inc. v. United States, 449 F.2d 789 (Ct. Cl. 1971). Here, by contrast, DaVinci contends that the Government seized equipment that had been "bought and sold among private companies for years." Opp'n at 5.

The Court finds DaVinci's argument unpersuasive. First, DaVinci attaches as Exhibit F to its complaint a letter from Christmas stating: "The undersigned, being fully authorized to take possession of the following items being claimed as constituting or consisting of '*information relating to the national defense*' acknowledges received of ten (10) JASSM antennae – from Leonardo Parra and DaVinci Aircraft." See Christmas Letter (emphasis added). In addition, at the time the Air Force seized the antennas, they were classified. See dkt. 17-1, Ex. A (a memorandum, dated July 22, 2014, from the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:16-cv-05864-CAS(JCx) | Date | January 30, 2016 |
|---|---|---|---|
| Title | DAVINCI AIRCRAFT, INC. v. UNITED STATES OF AMERICA ET AL. | | |

Director of Special Programs, who is designated the Original Classification Authority for the relevant program, stating that "the embedded features of the JASSM GPS antennas are classified at the SECRET and SECRET//SPECIAL ACCESS REQUIRED level and that their disclosure could provide adversarial nations with critically protected information"); McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988) ("[W]hen considering a motion to dismiss pursuant to Rule 12(b)(1) the district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction."). "The fact that the equipment repossessed was classified by the proper authority, coupled with the very nature of the equipment itself, leaves no room for doubt that it was related to the national defense." Dubin II, 363 F.2d at 942.[2] As a result, the Court finds that Section 28 U.S.C. § 2680(c) precludes the Court from exercising jurisdiction over DaVinci's claim that defendants were engaged in a conspiracy related to abuse of process (to the extent DaVinci even raises such a claim).

Accordingly, the Court **GRANTS** the Government's motion to dismiss DaVinci's conspiracy claim as it relates to the abuse of process and **DISMISSES** the claim without prejudice.

### C. DaVinci's Claim for Conversion

Much the same reasoning applies to DaVinci's claim for conversion. DaVinci contends that its conversion claim sounds in tort and that, pursuant to the FTCA, the United States has consented to jurisdiction over a conversion claim against it in district court. However, DaVinci's claim is barred by Section 2680(c).

The language of Section 2680(c) generally bars claims for conversion where, as here, the claim arises out of detention of property. See Ali v. Fed. Bureau of Prisons, 552 U.S. 214, 228 (2008) (Section 2680(c) maintains sovereign immunity for the "entire universe of claims against [any] law enforcement officers" arising out of the "detention" of property); Interfirst Bank Dallas, N.A. v. United States, 769 F.2d 299, 307 (5th Cir. 1985) (common law conversion claim barred by Section 2680(c)); Ford v. United States, 85 F. Supp. 3d 667, 671 (E.D.N.Y. 2015) (same). "[W]aivers of sovereign immunity must be construed strictly in favor of the sovereign." Foster v. United States, 522 F.3d

---

[2] The Court notes that classification is not a prerequisite to seizure pursuant to Section 793(d).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:16-cv-05864-CAS(JCx) | Date | January 30, 2016 |
|---|---|---|---|
| Title | DAVINCI AIRCRAFT, INC. v. UNITED STATES OF AMERICA ET AL. | | |

1071, 1074 (9th Cir. 2008). For the reasons already discussed, it appears that the seizure of the JASSM antennas was not for purposes of forfeiture, but rather pursuant to Section 793(d) of the Espionage Act. Accordingly, the Court is without jurisdiction to consider DaVinci's conversion claim.[3]

### D. DaVinci's Claim for Breach of Implied Contract

The Government argues that DaVinci's claim for breach of implied contract must be dismissed because the Court lacks jurisdiction to hear such a claim. The Court agrees.

The United States may only be sued where it has consented to suit. The existence of consent is a prerequisite to jurisdiction. United States v. Mitchell, 463 U.S. 206, 212 (1983). A district court's jurisdiction over contract claims against the United States is limited to claims that do not exceed $10,000. 28 U.S.C. § 1346(a)(2). In this case, DaVinci seeks $1,250,000 in damages resulting from the United States' alleged breach of an implied contract. Accordingly, the Court lacks jurisdiction over DaVinci's contract claim and DaVinci's claim is **DISMISSED**.[4]

---

[3] In opposition to this conclusion, DaVinci relies upon Aleutco Corp. v. United States, 244 F.2d 674 (3d Cir. 1957). It is true that in Aleutco, the court permitted a claim against the United States for conversion under the FTCA, notwithstanding the language of section 2680(c). However, the Aleutco opinion makes no mention of Section 2680(c). Instead, the Aleutco court and was concerned with whether a plaintiff was required to bring a conversion claim as a contract-based claim in the Federal Court of Claims. See id. at 678. Not only does Aleutco make no mention of Section 2680(c), but it also preceded several cases construing Section 2680(c) broadly. See e.g. Kosak v. United States, 465 U.S. 848 (1984); Ali, 552 U.S. 214. Accordingly, Aleutco is not persuasive authority regarding the scope of Section 2680(c).

[4] The Tucker Act vests the Federal Court of Claims with jurisdiction over contract claims against the United States regardless of the amount claimed. See 28 U.S.C. section 1491(a)(1). Accordingly, if DaVinci has a claim for more than $10,000 damages as a result of the United States' breach of implied contract, it must be brought in the Federal Court of Claims.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:16-cv-05864-CAS(JCx) | Date | January 30, 2016 |
|---|---|---|---|
| Title | DAVINCI AIRCRAFT, INC. v. UNITED STATES OF AMERICA ET AL. | | |

**E.  DaVinci's Bivens Claim**

The Government notes that DaVinci, in stating that its suit is brought under the Fourth Amendment, Compl. ¶ 1, may be attempting to allege a constitutional tort against Christmas and Lewis. MTD at 4. The Government argues that DaVinci may not bring a constitutional tort action against Christmas and Lewis because DaVinci sued them in their official capacities. Id.

In its opposition, DaVinci asserts that it "intended" to allege claims against Christmas and Lewis in their individual capacities. Opp'n at 4. DaVinci further argues that this Court has jurisdiction over claims against the individual defendants on the basis of Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). Opp'n at 6.

As an initial matter, whether DaVinci intended to do so or not, it has only alleged claims against Christmas and Lewis in their official capacities. See Compl. ¶¶ 9–10. "[A] Bivens action can be maintained against a defendant in his or her individual capacity only, and not in his or her official capacity." Daly-Murphy v. Winston, 837 F.2d 348, 355 (9th Cir. 1987). Accordingly, DaVinci has failed to allege a claim under Bivens.

DaVinci asserts that it will seek leave to "set forth allegations supporting the liability of defendants Christmas and Lewis in their individual capacities." Opp'n at 2. Although said allegations are not yet before the Court, in the interests of judicial efficiency, the Court notes that an amendment to the pleadings appears futile.

"Bivens created a remedy for violations of constitutional rights committed by federal officials acting in their individual capacities. In a paradigmatic Bivens action, a plaintiff seeks to impose personal liability upon a federal official based on alleged constitutional infringements he or she committed against the plaintiff." Consejo de Desarrollo Economico de Mexicali, A.C. v. United States, 482 F.3d 1157, 1173 (9th Cir. 2007). However, not all alleged constitutional violations can be converted into Bivens claims against the individual official.

> The Supreme Court has instructed us that a Bivens action does not lie where a comprehensive federal program, with extensive statutory remedies for any federal wrongs, shows that Congress considered the types of wrongs that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:16-cv-05864-CAS(JCx) | Date | January 30, 2016 |
|---|---|---|---|
| Title | DAVINCI AIRCRAFT, INC. v. UNITED STATES OF AMERICA ET AL. | | |

could be committed in the program's administration and provided meaningful statutory remedies.

Adams v. Johnson, 355 F.3d 1179, 1183–84 (9th Cir. 2004). "The Tucker Act . . . provides a statutorily defined mechanism for asserting claims against the United States for just compensation for public takings." Anoushiravani v. Fishel, No. 04-cv-212-MO, 2004 WL 1630240, at *9 (D. Or. July 19, 2004). Numerous courts have concluded that a Bivens claim cannot be brought against individual officials where plaintiff might otherwise bring a Fifth Amendment, takings claim in the Federal Court of Claims pursuant to the Tucker Act. See e.g., Anoushiravani, 2004 WL 1630240 at *9 (dismissing claim which could be brought against the United States pursuant to the Tucker Act and Fifth Amendment); Reunion, Inc. v. F.A.A., 719 F. Supp. 2d 700, 710 (S.D. Miss. 2010) (same).

DaVinci seeks compensation for ten antennas that it alleges were taken without compensation and without authority. DaVinci's claims are in the nature of a takings claim, for which DaVinci may bring a claim in the Federal Court of Claims. Accordingly, there does not appear to be a basis for permitting a Bivens claim against Christmas and Lewis in their individual capacities.

In light of the foregoing, the Court **DISMISSES** without prejudice DaVinci's Bivens claims, to the extent DaVinci alleges any.

**V.    CONCLUSION**

In accordance with the foregoing, the Court **GRANTS** the Government's motion and **DISMISSES** DaVinci's claims without prejudice. DaVinci shall have **twenty one (21) days** from the date of this order to file an amended complaint addressing the deficiencies identified herein.

IT IS SO ORDERED.

|  | 00 | : | 15 |
|---|---|---|---|
| Initials of Preparer | CL | | |